N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00666-MSK-CBS

WILLIAM M. WRIGHT,
        Plaintiff,
v.

MICHELLE STURM, Nurse, and
EFRAIN UBINAS, Nurse,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) "Defendant Sturm's and Ubinas's

Motion for Summary Judgment" (filed August 3, 2009) (doc. # 97); and "Defendant-

Intervenor Board of County Commissioners for the County of Arapahoe's Motion for

Default and/or Summary Judgment" (filed August 3, 2009) (doc. # 98).  Pursuant to the

Order of Reference dated May 6, 2008 (doc. # 11) and the memoranda dated

December 3, 2009 (docs. # 108 and # 109), these matters were referred to the

Magistrate Judge.

        On August 18, 2009, Mr. Wright filed his "Motion to Answer Orders" (doc. # 101),

which was treated as a request for an extension of time to respond to Defendants'

Motion for Summary Judgment and Defendant-Intervenor's Motion for Default and/or

Summary Judgment.  Defendants did not object to an extension.  (*See* doc. # 103).  On

September 9, 2009, the court ordered Mr. Wright to respond to the Defendants' Motions

on or before September 18, 2009.  (*See* Courtroom Minutes/Minute Order (doc. # 105)).

1

Mr. Wright has not filed any response to either of the Defendants' Motions.  The court has reviewed the Motions, the entire case file, the evidence in the record, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

On February 2, 2009, District Judge Krieger ruled that this action shall proceed on "an 8th Amendment claim against the Defendants with regard to the delay in treating [Mr. Wright's] broken wrist." (*See* "Opinion and Order Denying, in Part, Motion to Dismiss" (doc. # 75) at p. 9 of 9).  In his Amended Complaint, Mr. Wright seeks "monetary relief." (*See* doc. # 7 at p. 8 of 9).  Defendants filed their Answer on February 11, 2009.  (*See* doc. # 80).  On May 12, 2009, the court permitted Defendant-Intervenor Board of County Commissioners for the County of Arapahoe, Colorado ("BOCC") to intervene pursuant to Fed. R. Civ. P. 24.  (*See* doc. # 88).  BOCC filed its Answer and Counterclaim on March 19, 2009.  (*See* doc. # 83).  Defendants have moved for summary judgment for the reasons that: (1) Mr. Wright has not demonstrated the elements of his Eighth Amendment claim, (2) Defendants are entitled to qualified immunity, and (3) Mr. Wright did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  BOCC further moves for summary or default judgment on its Counterclaim.

II.     Standard of Review

As of this date, Mr. Wright has not filed any response to either of the pending

2

Motions.  Fed. R. Civ. P. 56(e) specifically contemplates the consequences of failing to

oppose a summary judgment motion:

> When a motion for summary judgment is properly made and supported,
> an opposing  party may not rely merely on allegations or denials in its own
> pleading; rather, its response must – by affidavits or as otherwise
> provided by this rule -- set out specific facts showing a genuine issue for
> trial.  If the opposing party does not so respond, summary judgment
> should, if appropriate, be entered against that party.

*See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970) (the burden on the

nonmovant to respond arises only if the summary judgment motion is properly

"supported" as required by Rule 56(c)), *superseded on other grounds by Celotex Corp.*

*v. Catrett*, 477 U.S. 317 (1986).  "Accordingly, summary judgment is 'appropriate' under

Rule 56(e) only when the moving party has met its initial burden of production under

Rule 56(c)."  *Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir.

2002).  "If the nonmoving party fails to respond, the district court may not grant the

motion without first examining the moving party's submission to determine if it has met

its initial burden of demonstrating that no material issues of fact remain for trial and the

moving party is entitled to judgment as a matter of law."  *Id.  See also Barton v. City*

*and County of Denver*, 432 F. Supp. 2d 1178, 1188 (D. Colo. 2006) (although plaintiff's

failure to make a substantive response constituted a confession of facts asserted by

defendants, it remained incumbent upon the court to make the specific determinations

required under Rule 56(c)).

The court applies the following inquiry to determine whether the facts asserted

by the movant permit entry of judgment as a matter of law.

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry

3

of a judgment only if no trial is necessary. Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. A factual dispute is genuine and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.

       If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.

*Johnson v. Liberty Mutual Fire Ins. Co.*, 653 F. Supp 2d 1133, 1137 (D. Colo. 2009)

(internal quotation marks and citations omitted).


III.    Analysis

A.    Defendants' Motion for Summary Judgment

       Mr. Wright claims that the Defendants violated his constitutional right to receive timely medical care for a broken wrist.  (*See* "Opinion and Order Denying, in Part, Motion to Dismiss" (doc. # 75) at p. 9 of 9).  Mr. Wright was a pretrial detainee when he commenced this lawsuit and until he was transferred out of the Arapahoe County Detention Facility ("ACDF") on November 5, 2008.  Although pretrial detainees like Mr. Wright are protected under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment, courts apply an analysis identical to that applied in Eighth

Amendment cases in determining whether a pretrial detainee's rights were violated. *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement . . ., the Eighth Amendment standard provides the benchmark for such claims.").  *See also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, [and courts in this circuit] appl[y] an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.");  *Howard v. Dickerson*, 34 F.3d 978, 980 (10th Cir. 1994) (court must apply the standards applicable under the Eighth Amendment in reviewing pretrial detainee's medical treatment claims);  *Martin v. Bd. of County Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990) ("pretrial detainees are entitled under the fourteenth amendment's due process clause to the same degree of protection regarding medical attention afforded convicted inmates under the eighth amendment.").

"[P]risoners have an Eighth Amendment right to adequate medical care. . . ." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).  To demonstrate an Eighth Amendment violation, an inmate must satisfy both objective and subjective elements. The objective component is met if the deprivation is "sufficiently serious," *i.e.*, one that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine*, 241 F.3d at 1276 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir .1999)).  *See also Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (a "serious medical need" is one that has been diagnosed by a physician as mandating

treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention) (citations omitted).  As Mr. Wright's claim is that medical treatment was delayed rather than refused, he "is required to make an additional showing that the delay in receiving care caused 'substantial harm.'" ("Opinion and Order Denying, in Part, Motion to Dismiss" (doc. # 75) at p. 5 of 9) (citations omitted).  "'Substantial harm' includes lifelong handicap, permanent loss, or considerable pain." *Id.* (citation omitted).

The subjective component of the deliberate indifference test is met if the defendant "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209.  "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" *Id.  See also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain"); *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) ("'[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'") (quoting *Estelle*, 429 U.S. at 106); *Sawyer v. County of Creek*, 908 F.2d 663, 667 (10th Cir. 1990) (detainee cannot demonstrate a violation of substantive due process upon a lesser showing than

deliberate indifference to serious medical needs), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993).  "Deliberate indifference" does not require a showing of express intent to harm, rather, it is enough that the official acted or failed to act despite his or her knowledge of a substantial risk of serious harm.  *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (citations omitted).

On February 11, 2008, Mr. Wright jumped or fell from a third floor balcony in an effort to evade arrest by officers from the Aurora Police Department.  Upon his arrest, Mr. Wright was taken to the emergency room at the Medical Center of Aurora, where he was evaluated and treated.  (*See* Affidavit of Elaine Meyer (Ex. A-1) (doc. # 97-2) at ¶¶ 9.b.(i), 9.b.(iii), 9.c., 9.n. and Attachments 4, 6, 7, 8 and 15 (docs. # # 97-6, 97-8, 97-9, 97-10, and 97-17; Deposition of Mr. Wright (Ex. A-5) (doc. # 97-36) at pp. 4-6 of 34).  Mr. Wright was diagnosed with a "deep laceration to the right hand" and a "[s]prained right wrist; right ankle, left wrist; [and] left ankle." (*See* Ex. A-1 (doc. # 97-2) at ¶¶ 9.b.(i) and Attachments 5, 6 (docs. # 97-7, # 97-8);  Ex. A-5 (doc. # 97-36) at pp. 10-11 of 34).

Upon his release from the Medical Center of Aurora on February 11, 2008, Mr. Wright was transferred to the City of Aurora Detention Center.  Mr. Wright's medical records from the Medical Center of Aurora, the Infirmary Nurse notes, and the records of the Initial Medical Screen performed at the Aurora Detention Center indicate that Mr. Wright was suffering from "sprained" wrists and ankles and a lacerated right hand that had been dressed at the emergency room, that he had received an EKG, chest and other x-rays, and that he had been treated with ice and ibuprofen.  (*See* Ex. A-1 (doc. #

97-2) at  ¶¶ 9.b.(i), 9.b.(ii), 9.c., 9.d., 9.e., 9.f., 9.g. and Attachments 4, 5, 6, 8, 9, 10, 11

(docs. # # 97-6, 97-7, 97-8, 97-10, 97-11, 97-12, 97-13); Ex. A-5 (doc. # 97-36) at pp.

7-8, 12 of 34).[2]  Mr. Wright complained of "pain all over," and "chest pain." (Ex. A-1

(doc. # 97-2) at ¶¶ 9.b.(i) and Attachment 4 (doc. # 97-6)).

Mr. Wright was later transported to the Arapahoe County Detention Facility

("ACDF"), where he was received at approximately 10:55 p.m. on February 11, 2008.

(*See* Ex. A-5 (doc. # 97-36) at pp. 13-14 of 34).  At 1:00 a.m. on February 12, 2008, Mr.

Wright was seen by a night nurse.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.a. and Attachment

3 (doc. # 97-5); Ex. A-5 (doc. # 97-36) at pp. 16-17 of 34).  At 6:00 a.m. on February

12, 2008, a nurse was called to Mr. Wright's cell.  Mr. Wright stated that he had jumped

out a window and could not move his legs, and that he had hurt his arms and chest.

The nurse noted Mr. Wright moving his feet and that Mr. Wright had slight edema in his

left wrist and loss of mobility.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.c. and Attachment 8

(doc. # 97-10)).

In accordance with the discharge instructions provided from the Aurora Medical

Center, Mr. Wright was provided ice and 600 mg. of ibuprofen for pain at 6:20 a.m. on

February 12, 2008.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.d. and Attachment 8 (doc. # 97-

10)).  Later that same morning, Mr. Wright was given a second medical screening.

(*See* Ex. A-1 (doc. # 97-2) at ¶ 9.e. and Attachment 9 (doc. # 97-11); Ex. A-5 (doc. #

97-36) at pp. 18-20 of 34).  At noon on February 12, 2008, Mr. Wright was given more

---

[2]     Although Attachment 9 is mistakenly dated "2-11-08," the screening performed
by Della Schmidt, LPN, who worked the morning/day shift, occurred on the morning of
February 12, 2008.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.e.).

ibuprofen and ice, and at 2:48 p.m., treatment orders based on the information provided by the Medical Center of Aurora were entered into Mr. Wright's chart.  (*See* Ex. A-1 (doc. # 97-2) at ¶¶ 9.f., 9.g. and Attachments 10 and 12 (docs. # 97-12 and # 97-14)).

On February 13, 2008, Mr. Wright declined to allow a nurse to change or clean the dressing on his right hand.  He accepted ibuprofen and ice at 8:00 a.m., noon, and 9:00 p.m. (Ex. A-1 (doc. # 97-2) at ¶¶ 9.h., 9.i. and Attachments 12 and 13 (docs. # 97-14 and # 97-15)).  On February 14, 2008, Mr. Wright allowed Defendant Ubinas to clean the laceration on his right hand at 8:00 p.m., and accepted a sling offered for his left arm.  (*See* Affidavit of Efrain Ubinas (Ex. A-2) (doc. # 97-31) at ¶ 5; Ex. A-1 (doc. # 97-2) at ¶ 9.j. and Attachment 13 (doc. # 97-15)).  Mr. Wright refused to accept ibuprofen and ice at 8:00 a.m. and noon, and agreed to accept ibuprofen but not ice at 9:00 p.m.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.i. and Attachment 13 (doc. # 97-15); Ex. A-3 (doc. # 97-33) at ¶ 6)).  On February 15, 2008, a nurse was summoned to the courthouse to attend to Mr. Wright's complaint of tenderness on the left side of his chest.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.m. and Attachment 14 (doc. # 97-16)).

On February 15, 16, 18, 20 and 21, 2008 Defendant Sturm attended to the daily cleaning of the laceration on Mr. Wright's right hand.  (*See* Affidavit of Michelle Sturm (Ex. A-3) (doc. # 97-33) at ¶ 6).  A different nurse attended to the laceration on February 17 and 19.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.l. and Attachment 13 (doc. # 97-15)).  During the same time period, Mr. Wright declined to take the ibuprofen offered to him on seven occasions.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.i. and Attachment 12 (doc. # 97-14)).  Mr. Wright also declined all ice packs offered, which were discontinued on

February 18, 2008.  (*See id.*).  Ibuprofen was discontinued on February 19, 2008.  (*See id.*).

A physician's assistant performed a further health assessment on Mr. Wright on February 21, 2008.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.n. and Attachment 15 (doc. # 97-17)).  The physician's assistant noted pain and moderate swelling and tenderness in Mr. Wright's left wrist, but no discoloration or deformity.  Based upon Mr. Wright's continuing complaint of pain in the wrist, the physician's assistant ordered additional x-rays.  (*See id.*).  Mr. Wright also reported continuing pain on the left side of his chest.  (*See id.*).  The sutures were removed from Mr. Wright's right hand and the sling earlier provided to him by Defendant Ubinas was replaced with a splint.  (*See id.*).  A new order for 600 mg. of ibuprofen as needed for pain was entered in Mr. Wright's medical chart.  (*See id.*).

Additional X-rays were taken of Mr. Wright's left wrist on February 25, 2008, resulting in a new initial diagnosis, pending a radiologist's report, of "a very small fracture."  (*See* Ex. A-1 (doc. # 97-2) at ¶¶ 9.p., 9.q. and Attachments 14 and 17(docs. # 97-16 and # 97-19)).  The radiologist's written evaluation of the x-rays received on March 3, 2008 reported a "minimally displaced distal fracture" and "lunate dislocation," along with "possible triquetral fracture."  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.s. and Attachment 20 (doc. # 97-22)).

On March 4, 2008 Mr. Wright was referred to Denver Health for an orthopedic exam and evaluation of his wrist, including a CT scan.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.t. and Attachments 22 and 23 (docs. # 97-24 and # 97-25)).  The orthopedic exam

and evaluation were completed on March 14, 2008 with a return visit to Denver Health on March 18, 2008 for the CT scan. (*See* Ex. A-1 (doc. # 97-2) at ¶¶ 9.v., 9.w. and Attachments 25 and 26 (docs. # 97-27 and # 97-28)). These examinations resulted in a diagnosis of "anterior lunate dislocation" with "undisplaced fractures of the capitate and triquetrum." (*See id.*). On March 20, 2008 surgery was performed on Mr. Wright's wrist to repair the dislocation. (*See* Ex. A-1 (doc. # 97-2) at ¶ 9.x. and Attachment 27 (doc. # 97-29)).

An inmate alleging an Eighth Amendment claim based on delayed medical treatment does not prove the claim simply by showing that a delay in treatment caused additional pain or injury. "The Eighth Amendment's ban on cruel and unusual treatment is violated only when the deprivation (or delay) of medical treatment constitutes 'the unnecessary and wanton infliction of pain.'" *Grassi v. Corrections Corporation of America,* 2008 WL 5172154 * 5 (D. Colo. 2008) (quoting *Estelle*, 429 U.S. at 104).[3] "A delay in treatment that is unintentional or unavoidable, even though it may result in the inmate suffering additional harm, is not actionable." *Id.* (citation omitted). "Thus, to prove a claim of deliberate indifference predicated on the delay in providing medical care, an inmate must show: (i) that he suffered from a serious medical need; (ii) that medical care to address that need was unnecessarily delayed; (iii) that the delay manifested the defendant's subjective disregard for the inmate's needs; and (iv) that the delay caused the inmate to suffer substantial harm, whether in the form of significant pain or permanent physical injury." *Id.*

---

[3]     A copy of this unpublished decision is attached to this Recommendation.

11

The court assumes that Mr. Wright had a serious medical need for purposes of an Eighth Amendment claim.  *See Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992) (citing cases holding that broken bones are sufficiently serious for purpose of Eighth Amendment).

Mr. Wright has alleged that Defendant Sturm "ignored my injured wrist" for several days and that Defendant Ubinas failed to provide any treatment for his wrist for eight days.  (*See* Amended Complaint (doc. # 7) at p. 4 of 9).  However, Mr. Wright has not come forward with facts that would show that Defendants Ubinas or Sturm in any way delayed treatment of his wrist.  The undisputed record establishes that Mr. Wright consistently received frequent medical attention from the time of his arrest on February 11, 2008 through his post-operative care.  The record additionally demonstrates that Mr. Wright was provided appropriate and timely care for any pain he may have been suffering.  On numerous occasions Mr. Wright declined medication and treatment offered for pain.

At all times relevant to Mr. Wright's claim, Defendants Ubinas and Sturm were employed as licensed practical nurses at ACDF whose duties included direct inmate care under the supervision of a physician, physician's assistant, registered nurse, and the Health Services Administrator.  (*See* Ex. A-2 (doc. # 97-31) at ¶ 1;  Ex. A-3 (doc. # 97-33) at ¶ 1).  When he entered ACDF, Mr. Wright had been previously diagnosed by the physician in the emergency room at the Medical Center of Aurora as suffering from a sprained wrist.  The medical records that accompanied Mr. Wright to the ACDF uniformly stated that his left wrist was sprained.  The undisputed record shows that Mr.

Wright was seen, examined, evaluated, and provided treatment by several medical professionals before and after the Defendants had contact with him.  Defendant Ubinas was off duty and not at ACDF on February 11, 12, 13, 25, and 26, 2008.  (*See* Ex. A-2 (doc. # 97-31) at ¶¶ 3, 4 and Attachment 1 (doc. # 97-32)).  Defendant Sturm was off duty and not at ACDF on February 11, 12, 13, 17, 19, 24, 26, 28 and 29, 2008.  (*See* Ex. A-3 (doc. # 97-33) at ¶¶ 3, 6, 8 and Attachment 1 (doc. # 97-34)).

Additional X-rays taken at ACDF of Mr. Wright's left wrist on February 25, 2008 revealed a small fracture which was diagnosed by the radiologist's report on March 3, 2008 and surgically repaired on March 20, 2008.  (*See* Ex. A-1 (doc. # 97-2) at ¶¶ 9.p., 9.q., 9.s. and Attachment 20 (doc. # 97-22)).  At no time prior to the diagnosis of a small fracture did Defendants Sturm or Ubinas know or suspect that Mr. Wright's wrist was broken and not sprained as documented in his medical chart.  (*See* Ex. A-3 (doc. # 97-33) at ¶¶ 5 and 10; Ex. A-2 (doc. # 97-31) at ¶¶ 4, 5 and 7; Ex. A-5 (doc. # 97-36) at pp. 19-21 of 34).  Nor was Mr. Wright aware that his left wrist was fractured until after it was x-rayed at ACDF on February 25, 2008.  (*See* Ex. A-5 (doc. # 97-36) at pp. 30-32 of 34).  As the evidence does not show that Defendants delayed or prevented treatment of Mr. Wright's wrist or were even aware of the fracture, Mr. Wright has not demonstrated that the Defendants were deliberately indifferent to his serious medical needs.  *See Self*, 439 F.3d at 1232 (where a defendant provides "treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law").

An inmate alleging an Eighth Amendment violation resulting from delayed

treatment must show that the delay caused him to suffer "substantial harm." *Sealock*, 218 F.3d at 1210. "Substantial harm" occurs when an inmate is forced to suffer substantial pain or experiences some permanent loss or disfigurement due to the delay. *See Hunt*, 199 F.3d at 1224. While the court may assume that Mr. Wright experienced pain from the time of the injury to his wrist until the surgery, Mr. Wright has not presented evidence that the delay in diagnosing his wrist fracture created the need for surgery. (*See* "Opinion and Order Denying, in Part, Motion to Dismiss" (doc. # 75) at p. 2 of 9 (Mr. Wright "states that, had he received earlier medical treatment, he could have avoided a surgery that was required to repair his left wrist.")). Mr. Wright offers no evidence that surgery was necessary only because of Defendants' alleged delay in treating his wrist, as opposed to the injury to his wrist caused by his February 11, 2008 fall onto his outstretched hand from a third floor balcony. *See Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (18 month delay for elective heart surgery did not violate Eighth Amendment)). *See also White v. State of Colorado*, 82 F.3d 364, 366-67 (10th Cir. 1996) (two-year delay in surgery on inmate's leg did not violate the Eighth Amendment because the delay caused no further damage to the leg). Mr. Wright has not shown that the Defendants' alleged failure to provide him timely treatment for his broken left wrist caused him to suffer substantial harm.

In the absence of specific evidence showing that Defendants Ubinas or Sturm in any way delayed the diagnosis and treatment of Mr. Wright's wrist fracture, much less evidence suggesting that the delay was recklessly indifferent to Mr. Wright's situation or caused him substantial harm, Defendants are entitled to summary judgment on Mr.

14

Wright's claim.

### 1.    Qualified Immunity

Defendants assert the defense of qualified immunity.  In an action brought under § 1983, the doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action.  *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997) ("officials performing discretionary function[s], generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When the defense of qualified immunity is raised in a summary judgment motion, the Plaintiff bears the burden to show both that each Defendant's action violated a constitutional right, and that that right was clearly established at the time of the conduct."  *Murphy v. Gardner*, 413 F. Supp. 2d 1156, 1162 (D. Colo. 2006).  Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the court has discretion to consider the elements in any order.  *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009);  *Green v. Post*, 574 F.3d 1294, 1299 (10th Cir. 2009).  As the court has concluded that the evidence before it, even viewed in the light most favorable to Mr. Wright, is insufficient to establish that Defendants violated Mr. Wright's constitutional rights under the Eighth Amendment, Defendants are entitled to qualified immunity.

2.    Failure to Exhaust Administrative Remedies

Further, Defendants are entitled to summary judgment on their affirmative

defense asserting Mr. Wright's failure to exhaust administrative remedies.  The PLRA

states that: "[n]o action shall be brought with respect to prison conditions under section

1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a). The PLRA's requirement that an inmate exhaust all

available administrative remedies before initiating suit is "mandatory," whether or not

such remedies "meet federal standards."  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

This "exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

After *Jones v. Bock*, 549 U.S. 199, 211 (2007), a failure to exhaust administrative

remedies constitutes an affirmative defense which must be pled and proved by

Defendants.  *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

There was an established inmate administrative health care grievance procedure

at the time Mr. Wright was at ACDF.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 7 and Attachments

1 and 2 (docs. # 97-3 and # 97-4)).  Mr. Wright was aware of the inmate medical

grievance procedure while he was at ACDF.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 11 and

Attachment 28 (doc. # 97-30); Ex. A-5 (doc. # 97-36) at pp. 14-15 of 34).  Mr. Wright did

not submit a medical complaint or grievance regarding the care or treatment provided to

him by Defendants Sturm or Ubinas.  (*See* Ex. A-1 (doc. # 97-2) at ¶ 11;  Ex. A-5 (doc.

16

# 97-36) at pp. 22-26 of 34; Amended Complaint (doc. # 7) at p. 7 of 9).  The

undisputed record demonstrates Defendants' affirmative defense that Mr. Wright did not

exhaust his available administrative remedies.  For this reason also, Defendants are

entitled to summary judgment on Mr. Wright's single remaining claim.


B.    Defendant-Intervenor Arapahoe County's Motion for Default and/or Summary
Judgment

Defendant-Intervenor BOCC moves pursuant to Fed. R. Civ. P. 55(b)(2) and 56

for entry of default and/or summary judgment in its favor and against Mr. Wright on its

counterclaim pursuant to Colo. Rev. Stat. § 17-26-104.5 to recover the sum of

$8,401.56 for the costs of outside medical services provided to Mr. Wright while he was

an inmate at ACDF.

Under Colorado law, "a governmental entity has an obligation to pay for outside

medical costs incurred in the care and treatment of a pretrial detainee in its custody."

*Poudre Valley Health Care, Inc. v. City of Loveland*, 85 P.3d 558, 559 (Colo. App.

2003).  BOCC incurred costs for the medical treatment of Mr. Wright's left wrist.  (*See*

Affidavit of Gail Thrasher, Ex. A-1 (doc. # 98-2) at ¶ 3).  The cost of the outside medical

treatment provided to Mr. Wright for his wrist totaled $27,675.78, including physician

fees, hospital and surgical fees, radiological testing and examination fees, supplies and

medication fees, and therapy fees from Denver Health Hospital and Denver Health

Physicians.  (*See* Counterclaim (doc. # 83) at ¶ 24;  Ex. A-1 (doc. # 98-2) at ¶ 3 and

Appx. 1 (doc. # 98-3) at pp. 1 to 22 of 22).  The court takes judicial notice pursuant to

F.R.E. 201(b) that the Denver Health Hospital is a licensed hospital.  *See*

www.cdphe.state.co.us and www.denverhealth.org.  After adjustments mandated by state law, BOCC paid Denver Health Hospital and Denver Health Physicians $8,401.56 in satisfaction of the initial $27,675.78 due and owing for the medical services provided to Mr. Wright.  (*See* doc. # 83 at ¶ 26; Ex. A-1 (doc. # 98-2) at ¶¶ 3, 4).  *See also* Colo. Rev. Stat. § 17-26-104.5(1.3).  Mr. Wright has failed and refused to reimburse or pay BOCC for the $8,401.56 in public funds expended to pay for the medical services provided to him at the Denver Health Hospital and by the Denver Health Physicians. (*See* doc. # 83 at ¶ 28; Ex. A-1 (doc. # 98-2) at ¶ 4; Defendants' First Set of Requests for Admissions to Plaintiff, Ex. A-2 (doc. # 98-6) at Admissions Requests 8 and 9; Ex. A-3 (doc. # 98-7) at pp. 5, 6 of 6).

More than twenty days has passed since the court accepted for filing BOCC's Answer and Counterclaim.  (*See* docs. # 83, # 88).  Mr. Wright has never filed an answer, denial, or other responsive pleading to BOCC's counterclaim.  Mr. Wright has never responded or objected to Defendant Sturm's and Ubinas' "First Set of Requests for Admissions to Plaintiff" that were served on him on or about May 7, 2009.  (*See* Ex. A-2 (doc. # 98-6); *see also* doc. # 91 (Order allowing Mr. Wright until July 7, 2009 to respond to Defendants' discovery)).  "Unanswered requests for admission are deemed admitted."  *Bergemann v. United States*, 820 F.2d 1117, 1120 (10th Cir. 1987).

BOCC has demonstrated that Mr. Wright received medical services and care performed by a physician or hospital while in the custody of the ACDF and that he failed to pay for the same.  *See* Colo. Rev. Stat. § 17-26-104.5 (1), (2), (3) and (4).  BOCC's Counterclaim is supported by the undisputed evidence in the record, viewed in a light

most favorable to Mr. Wright.  Mr. Wright has failed to answer, defend, or otherwise respond to BOCC's counterclaim.  BOCC is entitled to summary judgment on its Counterclaim against Mr. Wright for reimbursement of outside medical costs incurred for his treatment while he was in the custody of ACDF in the amount of $8,401.56.[4]

Accordingly, IT IS RECOMMENDED that:

1.      "Defendant Sturm's and Ubinas's Motion for Summary Judgment" (filed August 3, 2009) (doc. # 97) be GRANTED and summary judgment on the single remaining claim in the case be entered in favor of Defendants Sturm and Ubinas and against Plaintiff Mr. Wright, with each party to pay his, her, or its own costs and attorney fees.

2.      "Defendant-Intervenor Board of County Commissioners for the County of Arapahoe's Motion for Default and/or Summary Judgment" (filed August 3, 2009) (doc. # 98) be GRANTED IN PART and summary judgment be entered in favor of Defendant-Intervenor Board of County Commissioners for the County of Arapahoe and against Plaintiff Mr. Wright on the Counterclaim in the amount of $8,401.56 plus post-judgment interest at the applicable rate at the time judgment is entered, with each party to pay his, her, or its own costs and attorney fees.

_____

[4]      As BOCC has not provided legal authority or evidence to support its request for prejudgment interest (*see* doc. # 83 at p. 6 of 7), the court has not included such interest.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party

may serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583

(10th Cir. 1995).  A general objection that does not put the District Court on notice of

the basis for the objection will not preserve the objection for *de novo* review.  "[A]

party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for de novo review by the district court or for

appellate review."  *United States v. One Parcel of Real Property Known As 2121 East*

*30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make

timely objections may bar *de novo* review by the District Judge of the Magistrate

Judge's proposed findings and recommendations and will result in a waiver of the right

to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80

(10th Cir. 1999) (District Court's decision to review a Magistrate Judge's

recommendation *de novo* despite the lack of an objection does not preclude application

of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal*

*Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain

portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal

those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir.

1992) (by their failure to file objections, plaintiffs waived their right to appeal the

Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

review).

DATED at Denver, Colorado, this 18th day of February, 2010.

BY THE COURT:

___s/Craig B. Shaffer_____
United States Magistrate Judge